UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-20577-CV-MORENO/O'SULLIVAN

CARIDAD HORTA HERVAS,

     Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Plaintiff's Opening Brief in Support of

her Motion for Summary Judgment (DE # 16, 7/28/14) and the Defendant's Motion for

Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's

Motion for Summary Judgment (DE #18, 08/26/14).  The plaintiff seeks reversal of the

Social Security Administration's denial of Supplemental Security Income ("SSI"). The

complaint was filed pursuant to the Social Security Act, 42 U.S.C. §405(g), and is

properly before the Court for judicial review of a final decision of the Commissioner of

the Social Security Administration ("SSA").  This matter was referred to the undersigned

by the Clerk's Notice of Magistrate Judge Assignment (DE# 4, 2/14/14).  Having

carefully considered the filings and applicable law, the undersigned recommends that

the Plaintiff's Opening Brief in Support of her Motion for Summary Judgment (DE # 16,

7/28/14) be **DENIED** and the Defendant's Motion for Summary Judgment with

Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary

Judgment (DE #18, 08/26/14) be **GRANTED** in accordance with the following Report and Recommendation.

## PROCEDURAL HISTORY

CARIDAD HORTA HERVAS ("the plaintiff") was born on January 23, 1963, and was 46 years old at the alleged disability onset date of May 1, 2009.  (Tr. 139, 77-78 ).  The plaintiff claims disability due to depression, rheumatoid arthritis, headaches, hypertension, and obesity.  (Tr. 139).  The plaintiff protectively filed an application for Social Security Income on August 23, 2010 (Tr. 139-146).  The plaintiff's claims were denied both initially and on reconsideration.  (Tr. 77, 78, 79-81, 82, 83-85, 86, 87-88).  After the denial, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 93-95).  A hearing was held before the ALJ on April 20, 2012.  (Tr. 45-76).  The ALJ issued a decision on September 25, 2012, denying the plaintiff's application.  (Tr. 17-36).  The Appeals Council denied the plaintiff's request for review on December 19, 2013 (Tr. 1-6).

In the decision dated September 25, 2012, the ALJ found that the plaintiff was not disabled.  (Tr. 32).  The plaintiff argues that the ALJ gave inadequate weight to the opinion of the treating source medical practitioner (who was a nurse practitioner), that the ALJ failed to properly assess the plaintiff's credibility, and that the ALJ's residual functional capacity (RFC) assessment is not supported by substantial evidence.  (Plaintiff's Opening Brief in Support of her Motion for Summary Judgment (DE # 16, 7/28/14 at pp. 10, 12, and 15)).

## FACTS

### I. The Plaintiff's Age, Education, and Work Experience

The plaintiff was born on January 23, 1963, and was 49 years old on the date of the ALJ's decision (Tr. 17-36, 77-78, 139).  The plaintiff has a 12th grade education. (Tr. 77-78, 177).  The plaintiff does not have any past relevant work experience in the last 15 years.  (Tr. 159).

### II. Medical Evidence

In December 2009, the plaintiff received in-patient mental health treatment at Jackson Memorial Hospital.  (Tr. 240).  The plaintiff complained of feeling confused, depressed, and hopeless.  She also claimed she had difficulty maintaining conversations, multitasking, recalling information, and getting out of bed.  Id.  The plaintiff reported that the symptoms had become worse after her mother's death.  Id. The doctor noted that the plaintiff had difficulties with her short-term memory, multitasking, mental flexibility, and keeping up with conversations.  (Tr. 240-242).  The doctor further noted that the plaintiff's reaction time to certain tasks was mildly diminished and that she had a declining of function.  Id.  The plaintiff was discharged after four (4) days, her condition was stable at the time of discharge, and she was diagnosed with acute major depression, altered mental status, new onset diabetes, and hyperlipidemia.  (Tr. 245, 248). There were no illicit drugs or alcohol detected in her system at the time.  (Tr. 247).  At the time of discharge, the plaintiff was advised to see a psychiatrist for her depression, and the discharging doctor noted that the plaintiff had not had grief counseling or mental health treatment following the death of her mother.

(Tr. 245).

Later in December 2009, the plaintiff visited Citrus Health Network for mental health treatment.  (Tr. 271).  The plaintiff saw Dr. De La Vega, a psychiatrist, and the plaintiff reported feeling sad and apathetic with a lack of energy, low self esteem, decreased libido, deceased appetite, weight loss, and a lack of concentration.  Id.  A mental status examination revealed that the plaintiff was depressed with an anxious mood, and had a sad affect.  (Tr. 273).  The plaintiff had a normal thought process, but was obsessively worrying.  (Tr. 273, 276).  Dr. De La Vega noted that the plaintiff's speech was logical and coherent, and that the plaintiff made good eye contact during the initial mental status examination.  Id.  From a cognitive stand point, the plaintiff's orientation, attention/concentration, remote memory, information, calculation, abstract thinking, and insight were all good.  (Tr. 273).  The recent memory and judgment of the plaintiff were fair to intact.  (Tr. 273, 276).  Dr. De La Vega diagnosed the plaintiff with major depressive disorder, recurrent, severe, ruled out cognitive disorder, and assigned the plaintiff a Global Assessment of Function (GAF)[1] score of 50.  (Tr. 274, 277).  Dr. De La Vega recommended outpatient medical services and a referral to an external agency for lab tests and an evaluation.  (Tr. 274).

In February 2010, the plaintiff went to Jackson Health Community Mental Health Center as a follow up to her December 2009, hospitalization.  (Tr. 300).  The plaintiff was seen by Dr. Ramos, a psychiatrist, at Jackson Health Community Mental Health Center, at least four (4) times between February 2010, and July 2010.  (Tr. 300-303,

---

[1] The GAF score subjectively rates the functioning abilities of adults.

309-311). The plaintiff complained of depressive symptoms, including sadness, decreased energy, poor concentration, crying spells, and difficulty sleeping. Id. In February 2010, Dr. Ramos' evaluation noted that plaintiff's appearance, attitude, speech, thought process, and thought content were normal. (Tr. 303). The plaintiff's mood was depressed and anxious, and her insight, judgment, reliability, and impulse control were fair at that time. Id. The plaintiff's prognosis was "good" (Tr. 304), and the plaintiff had no medication side effects (Tr. 303). Dr. Ramos diagnosed the plaintiff with major depressive disorder, recurrent, severe, and assessed a GAF score of 50. (Tr. 300-302). The plaintiff was prescribed Wellbutrin, Klonopin, Celexa, and Trazodone (Tr. 306-307).

The plaintiff was seen by Gerda Williams, an Advanced Registered Nurse Practitioner (ARNP), at Jackson Community Mental Health Center between August 2010, and September 2012. (Tr. 312, 347-349, 372-376, 380-382, 393). The plaintiff reported to Gerda Williams, ARNP, that she had difficulty sleeping, low motivation, and isolative behavior. Id. Progress notes completed by Gerda Williams, ARNP, indicated that the plaintiff's appearance, attitude, speech, thought process, and thought content were normal between the time Gerda Williams, ARNP saw the plaintiff in 2010, and September 2012. (Tr. 309 - 311, 347-349, 372-376, 380-382). The plaintiff's mood was depressed and/or anxious, but the plaintiff's affect was normal and she did not have hallucinations or delusions. Id. The plaintiff's memory was normal and her appetite, sleep pattern, and eating pattern were occasionally fair, but were usually good. Id. The plaintiff's insight and judgment were fair. Id. In August 2010, the plaintiff had a poor appetite, as well as poor eating and sleeping patterns. (Tr. 312).

5

However, in August 2010, the plaintiff's memory appearance, attitude, speech, thought process, and thought content were unremarkable.  Id.  Gerda Williams, ARNP, repeatedly found that the plaintiff presented with depressed mood, flat affect, and fair insight, judgment, and impulsivity.  (Tr. 312, 347-349, 372-376, 380-382, 393).

In March 2011, Gerda Williams, ARNP completed a form submitted by the plaintiff's attorney.  (Tr. 364-367).  In the form, Gerda Williams, ARNP noted that at the time, the plaintiff had an affective mental disorder, and that the plaintiff was treated with various medicines.  (Tr. 365).  Gerda Williams, ARNP noted that, at the time, the plaintiff had a depressed or irritable mood, loss of interest in almost all activities, appetite disturbance, sleep disturbance, decreased energy, difficulty concentrating or thinking, hallucinations, delusions, or paranoid thinking.  (Tr. 365-366).  Gerda Williams, ARNP also indicated that the plaintiff had marked restrictions in activities of daily living as well as marked difficulties in maintaining social functioning as well as concentration, persistence, or pace.  (Tr. 367-374).  Moderate to marked limitations in understanding and memory were also noted by Gerda Williams, ARNP.  (Tr. 368).

In March 2012, at the request of the plaintiff's attorney, Gerda Williams, ARNP completed a Mental RFC assessment.  (Tr. 385-390).  In the document, Gerda Williams, ARNP indicated her health related specialty was psychiatry, but did not indicate if she was licensed in that specialty.  (Tr. 385).  Gerda Williams, ARNP reported that the plaintiff had major depression since 2009.  Id.  In the Metal RFC assessment, Gerda Williams, ARNP noted that the plaintiff had marked limitations in the ability to follow work rules, relate to co-workers or supervisors, deal with the public, make judgments about simple work-related decisions, respond appropriately to work

pressures, perform routine repetitive tasks, sustain concentration, sustain attention, understand and remember detailed instructions, carry out detailed instructions, complete a normal workday without interruptions form psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 387-388). Gerda Williams, ARNP also noted that the plaintiff was moderately limited in her abilities to understand and remember short, simple instructions, and to carry out short, simple instructions (Tr. 388). Gerda Williams, ARNP noted that at the time, the plaintiff suffered from a depressed mood almost every day, had markedly diminished interest in most activities, had insomnia, had a diminished ability to think or concentrate, had generalized fatigue, had low energy levels, was indecisive, and depended on family members. (Tr. 388-389).

In October 2010, the plaintiff underwent a consultative exam, at the request of the State agency, by Dr. Rodriguez-Dowling, a psychologist. (Tr. 314-319). The plaintiff complained to Dr. Rodriguez-Dowling of depression, anxiety, difficulty sleeping, isolative behavior, frequent crying spells, feelings of hopelessness and helplessness, lack of desire, poor concentration, lack of interest in hygiene, and suicidal ideation without a plan. (Tr. 315). The plaintiff presented as depressed, her affect was appropriate, and her thought process and her recent memory were both normal. (Tr. 317-318). The plaintiff's attention and immediate memory were fair, and her concentration was impaired. (Tr. 317). The plaintiff's insight and judgment were within normal range, and her abstract thinking was concrete. (Tr. 318). Dr. Rodriguez-Dowling noted that the plaintiff's social functioning was impaired. (Tr. 317). Dr. Rodriguez-Dowling diagnosed the plaintiff with major depressive disorder, recurrent,

7

severe without psychotic features, ruled out generalized anxiety disorder, noted that her cannabis abuse was in full sustained remission, ruled out reading disorder, and listed the plaintiff's prognosis as guarded.  (Tr. 319).

In November 2010, Tashara Whitehead, a single decision maker, completed a Physical RFC Assessment of the plaintiff in connection with the agency review of the plaintiff's file.  (Tr. 320-327).  Ms. Whitehead indicated that the plaintiff could occasionally lift and/or carry 50 pounds, could frequently lift and/or carry 25 pounds, could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, could sit (with normal breaks) about 6 hours in an 8-hour workday, and could push and/or pull in an unlimited fashion, other than the limitations noted in lifting and/or carrying.  (Tr. 321).  Ms. Whitehead noted that the plaintiff should be capable of activities within the limitations described in the assessment, and that pain and fatigue were included in the assessment.  (Tr. 325).

On January 13, 2011, Emile Commedore, M.D., a State Agency review physician, completed a Physical RFC Assessment of the plaintiff.  Dr. Commedore indicated that the plaintiff could occasionally lift and/or carry 50 pounds, could frequently lift and/or carry 25 pounds, could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, could sit (with normal breaks) about 6 hours in an 8-hour workday, and could push and/or pull in an unlimited fashion, other than the limitations noted in lifting and/or carrying. (Tr. 356).  Dr. Commedore further noted that the "[p]hysical exam and ancillary findings suggest at least partial credibility" and that the plaintiff should be able to function within the limits of the RFC.  (Tr. 360).

In November 2010, Shirley Ellis, Ph.D., completed a Psychiatric Review

Technique in connection with the agency review of the file.  (Tr. 328-341).  Dr. Ellis

noted that the plaintiff had mild restrictions in activities of daily living and difficulties in

maintaining social functioning.  (Tr. 338).  Dr. Ellis further noted that the plaintiff had

moderate difficulties in maintaining concentration, persistence, or pace, and no

episodes of decompensation.  Id.  Dr. Ellis indicated that the evidence did not establish

the presence of the "C" criteria.[2]  (Tr. 339).

　　　Dr. Ellis also completed a Mental RFC in November 2010.  (Tr. 342-343).  In the

Mental RFC, Dr. Ellis noted that the plaintiff was not significantly limited in: 1) her ability

to remember locations and work-like procedures; 2) her ability to understand and

remember detailed instructions; 3) her ability to carry out very short and simple

instructions; 4) her ability to perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances; 5) her ability to sustain an

ordinary routine without supervision; 6) her ability to work in coordination with or

proximity to others without being distracted by them; 7) her ability to make simple work-

related decisions; 8) her ability to interact appropriately with the general public; 9) her

ability to ask simple questions or request assistance; 10) her ability to accept

instructions and respond appropriately to criticism from supervisors; 11) her ability to

get along with coworkers or peers without distracting them or exhibiting behavioral

---

[2] With respect to mental disorders, '[t]he criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description, that is manifested by the medical findings in paragraph A."  Social Security. (n.d.). Retrieved January 13, 2015, from http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm

extremes; 12) her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; 13) her ability to be aware of normal hazards and take appropriate precautions; 14) her ability to travel to unfamiliar places or use public transportation; and 15) her ability to set realistic goals or make plans independently of others.  (Tr. 342-343).  Dr. Ellis further noted that the plaintiff was moderately limited in: 1) her ability to understand and remember detailed instructions; 2) her ability to carry out detailed instructions; 3) her ability to maintain attention and concentration for extended periods; 4) her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and 5) her ability to respond appropriately to changes in the work setting. Id.

In December 2010, James Brown, Ph.D. completed a case analysis.  In one sentence, Dr. Brown noted that he had "reviewed all the evidence in file (including MER[3] not received before evaluation) and the PRTF/MRFC[4] of 11/05/2010 is affirmed as written".  (Tr. 351).

**III. Adult Function Report**

On September 13, 2010, Ann Hervas completed an Adult Function Report on behalf of the plaintiff.  (Tr. 185-192).  When describing what the plaintiff does from the time she wakes up until the time she goes to bed, the Report indicated that, among other things, the plaintiff sometimes buys cigarettes, looks out the window, walks in the

---

[3] MER is the Medical Evidence of Record.

[4] PRTF is the Psychiatric Review Technique Form and MRFC is the Mental Residual Functional Capacity.

house, takes the dogs to the yard, eats lunch, once in a while does the laundry, and talks on the phone when feeling well.  (Tr. 185).  The Report also noted that the plaintiff sometimes changes to day clothing, showers, but not every day, washes her hair sometimes when she showers, sometimes shaves her legs and underarms, eats sandwiches and food that is cooked by her or her daughter, and that she can't concentrate. (Tr. 186).  The Report notes that the plaintiff talks on the phone everyday, and sometimes a friend visits her, but that she does not have any places that she goes on a regular basis.  (Tr. 189).

**IV. Hearing Testimony**

A hearing was held before the ALJ on April 20, 2012.  (Tr. 47-76).  The plaintiff testified at the hearing.  (Tr. 50-62).  At the hearing plaintiff stated that she stopped working in 1996 or 1997 because she had two small children and she needed to care for her mother who was disabled.  (Tr. 50).  The plaintiff has not worked since that time. (Tr. 51).  The plaintiff testified that she lives with her 23-year old daughter, and that her daughter works and covers living expenses.  Id.  The plaintiff further testified that she is unable to work due to her mental impairments.  (Tr. 52).  The plaintiff stated that her symptoms vary (Tr. 58) but that she lacks concentration and the energy to do anything, even to get herself out of bed.  (Tr. 52).  The plaintiff indicated that she has one or two good days a week, and the rest of the days of the week are bad.  (Tr. 59).  The plaintiff noted that her medications help her a little and that she does not have any side effects from the medicines.  (Tr. 53).  Once in a while, the plaintiff helps with the dogs, does the laundry when she is out of clothing to wear, and takes out the garbage.  (Tr. 59-60). The plaintiff testified that she does drive short distances to the grocery store a few

times a week to purchase items, but that she does not drive long distances for fear of getting lost.  (Tr. 57).    The plaintiff noted that she does not sleep well and that she socializes occasionally, but there are times when she is not up to talking and is not interested in what others have to say.  (Tr. 58-61).

A vocational Expert (VE), Mr. Fannin, also testified at the hearing before the ALJ. (Tr. 62-74).  At the hearing, the VE confirmed that the plaintiff does not have any past relevant work experience.  (Tr. 64).  The ALJ posed the following hypothetical to the VE.

> Assume a hypothetical claimant of the same age, education, and work experience as this claimant with no established exertional limitation.  Because of the possibility of side effects from the medication such a hypothetical claimant should avoid ladders, ropes, scaffolds, and unprotected heights or operation of dangerous machine or moving mechanical parts.  Assume that such a hypothetical claimant is able to understand, remember, and carryout (sic) short, simple instructions, is able to sustain attention, concentration for – over periods at a time, and [INAUDIBLE] workday and short simple, instructions, can use judgment in making work related – in work decisions related to short simple instructions, is able to respond appropriately to supervision and co-workers and the usual work situation, requires application with set routine procedures and few changes during the workday, can interact appropriately with the public – sorry, can maintain regular attendance and be punctual within customary tolerances, and can perform activities within a schedule.  Do you have an opinion as to whether such a hypothetical claimant could do the companion work?

(Tr. 66-67).

In response to the ALJ's hypothetical, the VE indicated that companion work is

an SVP[5] of three and that it is low level, semi-skilled, not unskilled, work.  (Tr. 67).  The

VE opined that the hypothetical claimant could work the light jobs of a cashier, and a

cafeteria attendant.  (Tr. 68).  The VE also testified that the hypothetical claimant could

work the medium jobs of a kitchen helper, and an industrial sweeper or cleaner.  Id.

During the ALJ hearing, the plaintiff's attorney posed the following hypothetical to

the VE.

> And for purposes for my hypothetical you are to assume that
> marked impairment means that, and she has marked
> impairment in the ability to maintain attention and
> concentration for extended periods, the ability to perform
> activities within a schedule, maintain regular attendance,
> and be punctual within customary tolerances, the ability to
> work in coordination with or proximity to others without being
> distracted by them, ability to make simple work-related
> decisions, ability to get alone (sic) with co-workers without
> distracting them or exhibiting behavioral extremes, and the
> ability to respond appropriately to changes in a work setting,
> the ability to travel in unfamiliar places or use public
> transportation, and the ability to set realistic goals or make
> plans independently of others.

(Tr. 71).

In response to the hypothetical by the plaintiff's attorney, the VE testified that if

the noted work-related activities were markedly impaired, the claimant would not be

able to perform any of the jobs the VE listed in response to the ALJ's hypothetical.  (Tr.

71).

## **STANDARD OF REVIEW**

The Court must determine if it is appropriate to grant either party's motion for

---

[5] SVP is specified vocational preparation.

13

summary judgment.  Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C § 405 (g); see Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding that the reviewing court must not re-weigh evidence or substitute their discretion).  On judicial review, decisions made by the defendant, the Commissioner of Social Security, are conclusive if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C § 405(g) (2006); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). Substantial evidence is more than a scintilla, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997). Substantial evidence is relevant evidence a reasonable person would accept as adequate to support the ALJ's conclusion. Richardson, 402 U.S. at 401.  "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. See Miles v. Charter, 84 F.3d 1397, 1400 (11th Cir. 1996).  In determining whether substantial evidence exists, "the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

The restrictive standard of review, however, applies only to findings of fact.  No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims.  See Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining

14

that the proper legal analysis has been conducted mandates reversal."); accord Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). The court may not, however, decide facts anew, re-weigh evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See Miles v Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); see also Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989). Factual evidence is presumed valid, but the legal standard applied is not. See Martin, 894 F.2d at 1529. The Commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. Id.

## **LEGAL ANALYSIS**

"Disability" is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can last for a continuous period of not less than twelve months...." 42 U.S.C. §§ 416(I); 423(d)(1); 20 C.F.R. § 404.1505 (2005). The impairment(s) must be severe, making the plaintiff "unable to do his previous work ... or any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505-404.1511.

To determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-step analysis. 20 C.F.R. § 404.1520(a) - (f). The ALJ must first determine whether the plaintiff is presently employed. If so, a finding of non-disability is made and

the inquiry ends.  Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or a combination of impairments. If the plaintiff does not, then a finding of non-disability is made and the inquiry ends.  Third, the ALJ compares the plaintiff's severe impairments to those in the listings of impairments located in Appendix I to Subpart 404 of the Code of Federal Regulations.  20 C.F.R. § 404.1520(d), Subpart P, Appendix I.  Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the plaintiff's ability to perform other work.  See, Gibson v. Heckler, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985).  If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded.  20 C.F.R. § 404.1520(d).  Fourth, the ALJ must determine whether the plaintiff has the "residual functional capacity" to perform his or her past relevant work.  "Residual functional capacity" is defined as "what you can do despite your limitations." 20 C.F.R § 404.1545(a)(1).  This determination takes into account "all relevant evidence," including medical evidence, the claimant's own testimony and the observations of others.  If the plaintiff is unable to perform his or her past relevant work, then a prima facie case of disability is established and the burden of proof shifts to the Commissioner to show at Step 5 that there is other work available in the national economy which the plaintiff can perform.  20 C.F.R. § 404.1520(e); see Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991) (The claimant bears the initial burden of proving that he is unable to perform previous work.).  Fifth, the ALJ must decide, if the plaintiff cannot perform his or her past relevant work, if he or she is capable of performing any other work in the national economy.

In the instant case, at Step 1, the ALJ determined that the plaintiff was not employed, and thus, not participating in Substantial Gainful Activity.  (Tr. 22).  This allowed the ALJ to move to Step 2 to determine whether the plaintiff had a severe impairment or combination of impairments.  Here, the ALJ found that the plaintiff had the severe impairments of hypertension and affective mood disorder.  Id.

At Step 3, the ALJ found that despite the medical impairments listed above, the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).  (Tr. 23).  In reaching the decision, the ALJ considered all of the impairments under 404, Subpart P, Appendix 1, including the cardiovascular disorders found in 4.00.  Id.  Thereafter, the ALJ found that the plaintiff had the RFC to perform a range of medium and light work.  (Tr. 25, 31).  The ALJ noted that

> [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c).  Additionally, the claimant should avoid climbing ladders, ropes and scaffolds, as well as all exposure to working at unprotected heights, or the operation of dangerous machinery, and/or moving mechanical parts. Mentally, the claimant is able to understand, remember, and carry out short, simple instructions.  She is able to use judgment in making work decisions related to short, simple instructions.  She is able to respond appropriately to supervision, co-workers, and the usual work situations.  She requires occupations with a set routine and procedures and with few changes during workday.  She is able to interact appropriately with the public, maintain regular attendance and be punctual within customary tolerances; and perform activities within a schedule.

(Tr. 25).

In making the aforementioned finding, the ALJ considered all the symptoms and the extent to which those symptoms may be accepted as reasonably consistent with all evidence, including the objective medical evidence, based on the requirements stated in 20 CFR 416.929 and SSRs 96-4p and 96-7p.  (Tr. 25).  The ALJ accorded no weight to the opinion evidence of Gerda Williams, ARNP, because she is not an acceptable source.  (Tr. 29).  With respect to the opinions of Gerda Williams, ARNP, the ALJ also found that the "opinions are inconsistent with the contemporaneous clinical notes by this treating source."  (Tr. 29).  The ALJ did, as required by law, consider all her notes in assessing the RFC.  Id.  Even though no weight was afforded to the opinion evidence of Gerda Williams, ARNP, the ALJ still noted that the opinions were inconsistent with the nurse's clinical notes.  Id.  The ALJ found that the plaintiff's impairments could cause the plaintiff's alleged symptoms, but that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the" RFC assessment in October 2010, made by Dr. Rodriguez-Dowling.  (Tr. 28).  The ALJ noted inconsistencies between the plaintiff's testimony and the clinical notes.  (Tr. 26).  The ALJ noted that "[f]or example, although she reports difficultly sleeping and poor sleep, her clinical notes document improvement in that area with treatment since April 2010.  Id.

At step four, the ALJ found that the plaintiff did not have any past relevant work. (Tr. 31).  The ALJ also found that the transferability of job skills was not an issue because the plaintiff id not have any past relevant work (20CFR 416.968).  Id.  At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience,

18

and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).  Id. The ALJ determined that the plaintiff could perform the jobs identified by the VE at the hearing and that the plaintiff had "not been under a disability, as defined in the Social Security Act, since August 23, 2010, the date the application was filed (20 CFR 416.920(g)).  (Tr. 32).

## I. The Opinions of Gerda Williams, ARNP

The plaintiff contends that the ALJ improperly rejected the opinions of Gerda Williams, ARNP.  In doing so, the plaintiff argues that, under Social Security Ruling 06-03p: Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, the ALJ may use both the opinions and evidence from acceptable medical sources and other sources, as defined in 20 CFR § 416.913(d), to demonstrate the severity of one's impairments and how the individual's ability to function is affected.  (Plaintiff's Motion for Summary Judgment (DE # 16, 7/28/14 at 10).  Under  Social Security Ruling 06-03p: Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, under the heading "Other Sources" it is noted that nurse practitioners are medical sources that are not acceptable medical sources.  "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other

19

sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Social Security Ruling 06-03p: Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies.

The ALJ discounted the source opinions of Gerda Williams, ARNP, because she was not an acceptable medical source.  (Tr. 29).  The ALJ's rejection of the opinions of Gerda Williams, ARNP, as an acceptable medical source was correct under Social Security Ruling 06-03p: Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies.  20 C.F.R. § 416.913 lists sources who can provide evidence to establish an impairment.  The list of acceptable medical sources includes licensed physicians and licensed psychologists, but does not include nurses. Nurses are specifically listed in the list of "other sources".  20 C.F.R. §416.913(d)(1).  Because nurses are specifically listed as "other sources", and not as sources who  can provide evidence to establish an impairment, they are not "acceptable medical sources".  Accordingly, even though the opinions of nurses may be relevant, the opinions need not be provided deference.

The ALJ did, however, consider relevant evidence in assessing the plaintiff's RFC.  (Tr. 23-25).  A review of the ALJ's opinion reveals that the ALJ properly considered all of the medical information and evidence in reaching the final decision that the plaintiff is not disabled.  The ALJ even noted that while no weight was given to

the opinion evidence of Gerda Williams, ARNP, her opinions were inconsistent with her clinical notes.  (Tr. 29).  In addition to not being an acceptable medical source, there are other reasons to reject the opinions of a treating source.  See 20 CFR § 416.927(b) & (c); Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004) (inconsistent treatment notes and the daily activities of the plaintiff supported a decision to reject the RFC evaluation of a treating source).

In order to determine whether the plaintiff had the ability to perform past relevant work or any future employment in the national economy, the ALJ must first determine the plaintiff's RFC. 20 C.F.R. § 404.1520(e). The ALJ considers all relevant evidence including medical evidence, the claimant's own testimony, and the observation of others. 20 C.F.R. § 404.1520(a)(3). When considering an individual's symptoms, the ALJ follows a two-step process in which the ALJ must conclude whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to decide the extent to which they limit the claimant's functioning. 20 C.F.R. § 404.1529(c)(1). If the statements regarding the extent of the symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record. 20 C.F.R. § 404.1529(c)(3) (2011).

A treating physician, generally, is entitled to controlling weight, if the treating physician's opinions are well-supported by medical findings and are consistent with other evidence. See 20 C.F.R. § 404.1572(c)(2) (2014) (providing that a treating

physician's opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record may be given controlling weight). "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); see also Venette v. Apfel, 14 F. Supp. 2d 1307, 1314 (S.D. Fla 1998) ("It is well settled that the ALJ may ignore the opinion of the treating physician regarding disability only if the opinion is so brief and conclusory that it lacks persuasive weight or is unsupported by any clinical or laboratory findings."); Oretga v. Chater, 933 F. Supp. 1071, 1074 (S.D. Fla. 1996) ("It is well established that the opinion, diagnosis, and medical evidence of Plaintiff's treating physician should be accorded substantial weight unless 'good cause' is shown for not doing so.") Although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. 20 C.F.R. § 404.1526 (1980). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is a reversible error. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). If, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (holding that Appeals Council's decision that a claimant's $50.00 per month rent offset was unearned income was not based on substantial evidence and was not harmless error when it affected the amount of the benefit the claimant was entitled to receive).

22

Here, the ALJ rejected the opinions of Gerda Williams, ARNP, because the ALJ found that the "opinions are inconsistent with the contemporaneous clinical notes by this treating source." (Tr. 29). The ALJ went on to say that the notes of Gerda Williams, ARNP consistently documented the plaintiff had a good appetite, good eating patterns, and good sleeping patterns, although she opined that such symptoms were present persistently. Id. The ALJ opined that the ARNP noted marked limitations in concentrating or thinking, yet the nurse's findings were contradicted by her own clinical notes. Id. In the medical source statement, Gerda Williams, ARNP indicated that the plaintiff had disturbance with her appetite, disturbance with her sleep, decreased energy, difficulty in concentrating or thinking, and that the plaintiff experienced hallucinations, delusions, or paranoid thinking. (Tr. 365-366). However, in contrast, in the examination reports by Gerda Williams, ARNP, the nurse indicated that the plaintiff had normal appearance, attitude, speech, memory, thought process, and thought content. (Tr. 309-311, 347-349, 372-376, 380-382). Moreover, most of the notes of Gerda Williams, ARNP indicated that the plaintiff generally had a good appetite, good sleep patterns, and good eating patterns, and that they were sometimes fair. (Tr. 309-310, 347-349, 3720376, 380-382). There was only one time when Gerda Williams, ARNP reported that the plaintiff suffered from a poor appetite, and poor eating and sleeping patterns. (Tr. 312). Accordingly, the undersigned finds that, regardless of the fact that the opinion of Gerda Williams, ARNP was accorded no weight, her opinions were inconsistent with her clinical notes.

In addition, the Medical Source Statement (Tr. 365-369) and the Mental RFC Assessment (Tr. 385-90) were check box forms that provided little or no narrative in

support of the conclusions that were offered in those documents.  The documents, should, therefore, be afforded little weight.  In <u>Mason v. Shalala</u>, 994 F.2d 1058 (3rd Cir. 1993), the Third Circuit found that "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."  <u>Id</u>, at 1065.

The ALJ also noted, and the record reflects that, among other things, in December 2009, when she visited Citrus Health Network, the plaintiff's speech was normal.  (Tr. 27, 273, 276).   The undersigned finds that the ALJ properly considered the opinions of Gerda Williams, ARNP.

**II. The Plaintiff's Credibility**

In evaluating a claimant's subjective complaints, the ALJ considers whether the claimant has a medical impairment that could reasonably be expected to produce pain or other symptoms. 20 C.F.R. § 404.1529(a) (2011).  A claimant's statements about her pain or other symptoms will not alone establish that she is disabled. <u>Id</u>. The ALJ must consider a claimant's subjective testimony if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to alleged pain. <u>Mason v. Bowen</u>, 791 F.2d 1460,1462 (11th Cir. 1986). The ALJ reserves the decision to determine whether the subjective testimony of the plaintiff is credible. <u>See Johns v. Bowen</u>, 821 F.2d 551, 557 (11th Cir. 1987). If the ALJ discredits a claimant's testimony, "he must articulate explicit and adequate reasons for doing so." <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987). SSR 96-7p (1996 WL 374186) lists the

24

following minimum factors to consider when making a credibility analysis: (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of any medication; (5) treatment, other than medication; (6) any measures other than treatment the individual uses to relieve pain or other symptoms; and (7) any other relevant factors.

Here, the ALJ determined that although the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent" with her RFC assessment. (Tr. 28). The undersigned finds that  the ALJ properly determined that the plaintiff's allegations were not entirely credible because the severity of her allegations are not supported by her testimony that she drove, did laundry, helped with the dogs, and took out the garbage.  (Tr. 57, 59-60).  The ALJ considered all of this in the review of the severity of the plaintiff's complaints about her symptoms.  (Tr. 28-29).

The undersigned finds that the ALJ properly determined that the plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms of her medical impairments were not credible, and the ALJ properly concluded that the plaintiff is not disabled.

### III. Residual Functional Capacity Determination

The plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (Plaintiff's Motion for Summary Judgment (DE # 16, 7/28/14 at p. 13)).  The plaintiff notes in her Motion for Summary Judgment that "[a]ccording the SSR

25

96-8p, the ALJ's residual functional capacity must be based on all of the relevant evidence in the case record, which includes activities of daily living, lay evidence, recorded observations, and medical source statements." Id. The plaintiff notes, that under the ruling, the RFC must both consider and address medical source opinions, and if the assessment conflicts with a medical source opinion, the ALJ is required to indicate why he or she does not adopt that opinion. Id. The plaintiff argues that the ALJ's readings of the Adult Function Report provided (Tr. 185-192) in response to the agency's request and the psychological consultative examiner's report (Tr. 313-319), both demonstrate that the plaintiff had a much different functional limitation than the one assigned by the ALJ. Plaintiff's Motion for Summary Judgment (DE# 16, 7/28/14 at p. 14). The plaintiff asserts that the ALJ failed to include key aspects noted in the Adult Function Report in the ALJ's summary of the contents of that report, and that the report supports a finding that the plaintiff is unable to fulfill her basic needs without help. Id, at 14-15. Pursuant to a review of the Adult Function Report and the record as whole, the undersigned finds that the ALJ's RFC is consistent with the medical evidence and record presented.

In December 2009, from a cognitive standpoint, the plaintiff's orientation, attention/concentration, remote memory, information, calculation, abstract thinking, and insight were all good. (Tr. 273). In October 2010, the plaintiff's insight and judgment were within normal range. (Tr. 318). In November 2010, the plaintiff was only found to have mild restrictions in activities of daily living and difficulties in maintaining concentration and social functioning. (Tr. 338).

The plaintiff also asserts that the ALJ erred by indicating that the plaintiff had

26

affective mood disorder instead of major depressive disorder.  (Id., at 15., Tr. 22).  A review of the record indicates, however, that Gerda Williams, ARNP indicated that the plaintiff had an affective mood disorder.  (Tr. 365).  The undersigned finds that the ALJ properly identified and evaluated the plaintiff's mental health condition.

The plaintiff further asserts that the ALJ substituted her own opinion for the opinions of the medical providers found in the record.  The law articulates that an uncontroverted medical opinion may not be substituted by an ALJ's judgment.  See Rosado v. Secretary of HHS, 807 F.2d 292, 293-94 (1st Cir. 1986).  Pursuant to a review of the record, the undersigned finds that the ALJ did not diagnose any conditions of the plaintiff and did not arbitrarily substitute her own opinion for the opinion of medical providers.  The undersigned finds that the ALJ considered the medical evidence and other evidence in the record, as provided for under the CFR, in order to assess the plaintiff's RFC.  It is the responsibility of the ALJ to assess the plaintiff's RFC.  See 20CFR §416.946(c).

As noted above, in December 2009, from a cognitive standpoint, the plaintiff's orientation, attention/concentration, remote memory, information, calculation, abstract thinking, and insight were all good.  (Tr. 273).  Also as noted above, in October 2010, the plaintiff's insight and judgment were within normal range,  (Tr. 318), and in November 2010, the plaintiff was only found to have mild restrictions in activities of daily living and difficulties in maintaining concentration and social functioning.  (Tr. 338).

In accordance with the foregoing, the undersigned finds that the ALJ properly considered all of the evidence in the record, including all of the medical evidence in the record, in its totality, in assessing the plaintiff's RFC, and that the ALJ's RFC finding is

27

supported by substantial evidence.

## RECOMMENDATION

In accordance with the foregoing, it is

      RESPECTFULLY RECOMMENDED that the decision of the Commissioner be

AFFIRMED, that the Plaintiff's Opening Brief in Support of her Motion for Summary

Judgment (DE # 16, 7/28/14) be **DENIED** and the Defendant's Motion for Summary

Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for

Summary Judgment (DE #18, 08/26/14) be **GRANTED** . The parties have fourteen (14)

days from the date of receipt of the Report and Recommendation within which to serve

and file written objections, if any, with United States District Judge Moreno. Failure to

file objections timely shall bar the parties from attacking on appeal the factual findings

contained herein. *See* RTC v. Hallmark Builders, Inc., 966 F.2d 1144, 1149 (11th Cir.

1993).

      RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida

this 13th day of January, 2015.

                                                        JOHN J. O'SULLIVAN

                                                         UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Moreno
All Counsel of Record